UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELTIC INTERNATIONAL, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC., a Georgia corporation<br><br>Defendant. | No. 2:15-cv-01679-TLN-DB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE** |

This matter is before the Court pursuant to Defendant J.B. Hunt Transport Inc.'s ("Defendant") Motion to Transfer Venue. (ECF No. 13.) Plaintiff Celtic International, LLC ("Plaintiff") filed an opposition to Defendant's motion. (ECF No. 17.) Defendant filed a reply to Plaintiff's opposition. (ECF No. 18.) Having carefully reviewed the briefing filed by both parties and for the reasons stated below, Defendant's Motion to Transfer Venue (ECF No. 13) is hereby DENIED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This case derives in part from the facts alleged in a different lawsuit pending before this Court, *Celtic International, LLC v. BNSF Railway Company*, 2:14-cv-02158-TLN-CKD (complaint filed on May 6, 2014). In that case, Plaintiff alleges that BNSF Railway Company ("BNSF") was liable and accountable to Plaintiff for cargo lost during a train derailment. Prior to

1

1  filing its complaint against Defendant J.B. Hunt Transport Inc., Plaintiff filed a Motion for Leave
2  to File a First Amended Complaint in which Plaintiff sought to add Defendant as an additional
3  defendant in its suit against BNSF.  (ECF No. 7 at 1.)  That motion is currently pending before
4  the Court.  On August 7, 2015, Plaintiff filed its Complaint in the instant action against Defendant
5  in order to avoid being time-barred by the statute of limitations.  (Compl., ECF No. 1.)  In the
6  Complaint, Plaintiff brings two claims against Defendant, one for breach of contract and another
7  for damages pursuant to the Carmack Amendment, 49 U.S.C. § 14706.  Plaintiff alleges the
8  claims arise out of a Broker-Carrier Agreement executed by the parties.  On December 18, 2015,
9  the Court issued an order relating the instant case to Plaintiff's case against BNSF.  (ECF No. 7.)

10         Plaintiff alleges that on May 31, 2013, Cobalt Transport Services, Inc. ("Cobalt") agreed
11  to arrange for the transport of various wines on behalf of shippers Glazers Inc., Victor L. Robilio
12  Company, and Athens Distributing Co. (collectively "Shippers") (ECF No. 1 ¶ 4.).  Cobalt then
13  made arrangements with Defendant to have the cargo shipped by BNSF from Northern California
14  to Tennessee.  (ECF No. 1 ¶ 4.)  Plaintiff alleges that Defendant issued a receipt or bill of lading
15  for the shipment.  (ECF No. 1 ¶¶ 11, 14, 17.)  On June 12, 2013, BNSF accepted the shipment.
16  (ECF No. 1 ¶ 5.)  On June 17, 2013, the train derailed in Texas causing damage to the cargo.
17  (ECF No. 1 ¶ 6.)  Plaintiff alleges that "on or before October 2013," Cobalt compensated the
18  Shippers for their total losses in the amount of $236,220.16.  (ECF No. 1 ¶ 21.)  In exchange, the
19  Shippers assigned any and all of their rights in connection with the loss to Cobalt.  (ECF No. 1 ¶
20  8.)  On October 16, 2013, Cobalt assigned its claims to Plaintiff.  (ECF No. 1 ¶ 8.)

21         On Feburary 8, 2016, Defendant filed the instant motion to transfer venue in this Court
22  arguing that the forum-selection clause in the contract designated the Western District of
23  Arkansas the exclusive forum for any action against Defendant.  (ECF No. 13.)  On February 24,
24  2016, Plaintiff filed an opposition, arguing that the forum-selection clause is not dispositive, and
25  the convenience of the parties and witnesses and the interest of justice would be best served in
26  Sacramento.  (ECF No. 17.)  Defendant filed a reply in support of the motion to transfer on March
27  3, 2016.  (ECF No. 18.)

28

## II.     STANDARD OF REVIEW

A motion to transfer is governed by 28 U.S.C. § 1404(a), which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Ordinarily, a number of factors may be considered when analyzing § 1404(a).[1] However, "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (footnote omitted).

A forum-selection clause is prima facie valid and should not be set aside unless the party challenging enforcement of the provision can show it is unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if: (1) its incorporation into the contract was the "result of fraud, undue influence, or overweening bargaining power;" (2) the selected forum is so inconvenient that "the complaining party will for all practical purposes be deprived of its day in court;" or (3) "enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing *Bremen*, 407 U.S. at 12–13, 15, 18) (internal quotation marks omitted).

Where the forum selection clause is found to be valid, the Court must adjust its usual § 1404(a) analysis. *Atl. Marine*, 134 S. Ct. at 581. First, the plaintiff's choice of forum merits no

---

[1] For example: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (footnotes omitted).

3

weight. *Id*. Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. *Id.* at 582. Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations. *Id.*

### III. ANALYSIS

The Court looks first to whether the forum-selection clause is presumptively valid. A forum-selection clause is presumed valid unless the party challenging enforcement can prove that one of three exceptions applies. The Ninth Circuit has described a forum selection clause as "unreasonable" and therefore unenforceable if (1) its incorporation was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so gravely difficult and inconvenient that the complaining party will be deprived of its day in court, or (3) enforcement of the clause would contravene strong public policy of the forum in which suit is brought. *Argueta*, 87 F.3d at 325.

Plaintiff does not assert that the clause was the result of fraud, undue influence, or overweening bargaining power. Therefore, the Court does not address this exception.

#### A. Convenience of the Parties

Plaintiff argues that it would be more convenient for the parties and the Court to keep the case in Sacramento. (ECF No. 17 at 2.) Given the pendency of Plaintiff's related case against BNSF, Plaintiff argues that a transfer of venue would lead to a waste of time, energy, and money. (ECF No. 17 at 5.) Furthermore, Plaintiff argues that Defendant and BNSF may eventually assert claims against each other, thus making it even more convenient to have all the pending cases in Sacramento. (ECF No. 17 at 3.) Plaintiff cites *Shanze* to support its argument that a transfer of venue is meant to avoid a situation in which cases involving precisely the same issues are simultaneously pending before different courts. *See Shanze Enterprises, Inc. v. Am. Cas. Co. of Reading, PA*, No. 2:14-CV-02623-KJM, 2015 WL 1014167, at *7 (E.D. Cal. Mar. 5, 2015). However, in *Shanze*, "[n]o forum selection clause applie[d] to the parties' agreement." *Id*. at *17.

1    Normally, a court accords a plaintiff's choice of forum "great weight." *Lou v. Belzberg*, 834 F.2d
2    730, 739 (9th Cir. 1987).  However, "[w]hen parties agree to a forum-selection clause, they waive
3    the right to challenge the preselected forum as inconvenient or less convenient for themselves or
4    their witnesses. . . . As a consequence, a district court may consider arguments about public-
5    interest factors only." *Atl. Marine*, 134 S.Ct. at 582.

6        Although Plaintiff's actions arise out of the same BNSF train derailment, Plaintiff's
7    arguments rely on the private-interest factors that under *Atl. Marine*, the Court may not consider.
8    Since both parties agreed to a forum-selection clause, Plaintiff waives the right to challenge the
9    preselected forum as inconvenient or less convenient. *See id.* at 581.  In addition, Plaintiff's
10   assertion that Defendant may end up asserting claims against BNSF is purely speculative and
11   lacks factual basis.  Plaintiff has the burden of proving that the extent of the difficulty and
12   inconvenience associated with transfer is so severe that it would effectively deprive Plaintiff of its
13   day in court.  *Bremen*, 407 U.S. at 18.  Plaintiff fails to meet its burden to show that the forum-
14   selection clause would inconvenience Plaintiff so gravely that it deprives it of its day in court as
15   required by the Ninth Circuit.  Therefore, the second *Argueta* exception does not invalidate the
16   forum-selection clause.

17       B.  Public Policy

18       Plaintiff overlooks that public policy favors resolving this dispute in Sacramento.  The
19   third *Argueta* exception provides that "a forum-selection clause is unreasonable if enforcement of
20   the clause would contravene a strong public policy of the forum in which the suit is brought,"
21   whether declared by statute or by judicial decision.  *Argueta,* 87 F.3d at 325; *see also Bremen*,
22   407 U.S. at 15.  When a party contends that a forum-selection clause conflicts with the public
23   policy manifested by a statutory provision, courts are to recognize the central public policy of the
24   statute through the process of statutory interpretation.  *Carnival Cruise Lines, Inc. v. Shute*, 499
25   U.S. 585, 595–96 (1991).  This includes examining the plain language of the statute and its
26   legislative history.  *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987)
27   (recognizing that if Congress intended to limit or prohibit a waiver of a judicial forum with regard
28   to a federal statutory cause of action, such "an intent will be deducible from the statute's text or

1   legislative history or from an inherent conflict between arbitration and the statute's underlying
2   purposes") (brackets, internal quotation marks, and citation omitted).

3   Plaintiff brought suit under the Carmack Amendment, a statute passed by Congress to
4   establish a uniform system of liability for carriers of goods in interstate commerce.  49 U.S.C. §
5   14706; *see Adams Express Co. v. Croninger*, 226 U.S. 491, 503–06 (1913).  Defendant asserts
6   that the Carmack Amendment contains a remedial scheme intended to protect shippers, not
7   brokers, whose cargo is lost or damaged by a carrier.  (ECF No. 13 at 6–7.)  In the instant case,
8   the Shippers assigned all of their rights in connection to the cargo loss to Cobalt, who
9   subsequently assigned its rights to Plaintiff.  (ECF No. 1 at 3–5.)  Defendant argues that Plaintiff,
10  a broker two assignments removed from the Shippers, lacks standing under the current text of the
11  Carmack Amendment and therefore, the public policy of the Carmack Amendment would not be
12  a reason to invalidate the forum-selection clause.  (ECF No. 13 at 7.)

13              *i.     Carmack Amendment*

14  The courts have uniformly held that the Carmack Amendment preempts all state and
15  common law claims and provides the sole and exclusive remedy to shippers for loss or damage in
16  interstate transit.  *Hughes Aircraft v. North American Van Lines*, 970 F.2d 609, 613 (9th Cir.
17  1992).  "The purpose of the Carmack Amendment [is] to relieve shippers of the burden of
18  searching out a particular negligent carrier from among the often numerous carriers handling an
19  interstate shipment of goods."  *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th
20  Cir. 2011) (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)).  The Carmack Amendment
21  requires that the shipper be permitted to sue in certain venues when a dispute arises.  *Smallwood*
22  *v. Allied Van Lines*, Inc., 660 F.3d 1115, 1121 (9th Cir. 2011).  It provides that, when suing the
23  delivering carrier, "[a] civil action ... may be brought ... in a district court of the United States ...
24  in a judicial district ... through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1).
25  Or, when suing the carrier alleged to have caused the damage, "[a] civil action ... may be brought
26  ... in the judicial district in which such loss or damage is alleged to have occurred." *Id.* §
27  14706(d)(2).  "[I]n light of the legislative history of the Carmack Amendment…the right of the
28  shipper to sue the carrier in a convenient forum of the shipper's choice is a right that Congress

6

intended to codify." *Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co.,* 537 F.2d 648, 654 (2d Cir. 1976). If the Court finds that the Carmack Amendment applies to Plaintiff as an assignee, enforcement of the forum-selection clause would contravene the strong public policy underlying the Carmack Amendment. Therefore, the third *Argueta* exception would invalidate the forum-selection clause. The Court turns to whether or not the assignment of claims allows Plaintiff to have standing under the Carmack Amendment.

### ii. *Assignment of Claims*

Defendant argues that although the Carmack Amendment's venue rule may prevail over forum-selection clauses, Plaintiff's status as a broker makes the instant case distinguishable. According to Defendant, the Carmack Amendment's remedial purpose is to limit protection to "shippers" and not "brokers." (ECF No. 13 at 6–7.) Defendant asserts that Plaintiff's status as a broker precludes it from enforcing the Carmack Amendment's remedial venue provision. (ECF No. 13 at 7.) Notwithstanding the assignment of claims from Cobalt to Plaintiff, Defendant contends that Plaintiff does not fall into the class of persons that the Carmack Amendment intended to protect. (ECF No. 13 at 8–9.) Defendant asserts that Plaintiff would lack standing to bring such a claim. However, Defendant does not identify any authorities finding that the Carmack Amendment excludes Plaintiff because it is a "broker" and not the "shipper" of the goods and the Court can find no such case.

The plain language of the Carmack Amendment has been interpreted broadly and not limited to shippers. *See OneBeacon*, 634 F.3d at 1098 (finding a party having an interest in the shipment falls within the bill of lading's definition of "Shipper"). The definition of a shipper may extend beyond the person who owns the cargo and may include an agent or an independent contractor who contracts with a carrier for transportation of cargo. *R.E.I. Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, No. 05-57-GPM, 2007 WL 854005, at *5 (S.D. Ill. Mar. 16, 2007), *amended,* No. CIVIL NO. 05-57-GPM, 2007 WL 4225669 (S.D. Ill. July 10, 2007), *aff'd sub nom. REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693 (7th Cir. 2008), and *aff'd sub nom. REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693 (7th Cir. 2008). Under this definition, Plaintiff, as a broker who contracted with a carrier, may be considered a

shipper.

According to the Ninth Circuit, the crucial phrase under the current statute is "the person entitled to recover *under the receipt or bill of lading*." 49 U.S.C. § 14706(a)(1) (emphasis added); *OneBeacon*, 634 F.3d at 1097. Courts must analyze the bill of lading, rather than rely on an abstract classification system, to determine whether a party has standing to sue. *OneBeacon*, 634 F.3d at 1097. A bill of lading is a contract between the carrier and the shipper. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 954 (9th Cir. 2008). The "lawful holder" of the bill of lading can sue regardless of who actually owned the goods. *OneBeacon*, 634 F.3d at 1097 (citing *Pa. R.R. Co. v. Olivit Bros.,* 243 U.S. 574, 583, (1917)). The Ninth Circuit previously found standing in cases that raised similar questions about who may sue under a bill of lading. *See Lite–On Peripherals, Inc. v. Burlington Air Express, Inc.*, 255 F.3d 1189, 1193–94 (9th Cir. 2001); *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993). In *Lite–On*, the Ninth Circuit held that a carrier "cannot seek to include a broad range of parties within the contract's definition of 'Merchant,' and then claim that one of those parties has no standing to enforce" the contract. *Lite–On*, 255 F.3d at 1194. In each case the Ninth Circuit held that the bill of lading entitled the plaintiff to sue because the plaintiff fell within the definition of "Merchant," which encompassed a "broad range of parties." *Id.* at 1194; *All Pac.*, 7 F.3d at 1432.

Some courts take a broader approach and allow certain parties to sue even if they did not actually possess the bill of lading. *See Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2nd Cir. 1999) ("Suits under the Carmack Amendment may be brought against a carrier by any person entitled to recover in the carrier's 'bill of lading,' including the buyer who was to receive the good[s]"); *see, e.g.*, *Del., L. & W.R. Co. v. United States*, 123 F. Supp. 579, 581 (S.D.N.Y. 1954) (allowing the United States, as owner of the goods, to sue regardless of who possessed the bill of lading); *see also Harrah v. Minn. Mining & Mfg. Co.*, 809 F. Supp. 313, 318 (D.N.J. 1992) (noting various classes allowed to sue, including shippers, consignors, consignees, "holders of the bill of lading," and "persons beneficially interested in the shipment").

The parties in the instant case did not provide the Court with the bill of lading at issue, but

1  the Court notes that Defendant denies the allegation in the Complaint regarding the bill of lading
2  because Defendant lacks sufficient knowledge.[2]  (ECF No. 1 ¶¶ 11, 14, 17.)  Nonetheless,
3  Defendant, as the party moving for the transfer of venue, bears the burden of justifying the
4  transfer.  Because the bill of lading is unavailable here, and the Ninth Circuit does not explicitly
5  preclude a broker from suing under a bill of lading, this Court concludes that Plaintiff would have
6  standing to sue as a "Shipper" under the bill of lading.  Other courts' broad approaches in
7  allowing parties to sue when those parties do not actually possess the bill of lading are also
8  instructive.  In the instant case, the Shippers assigned all of their rights in connection to the cargo
9  loss to Cobalt.  As Cobalt's assignee, Plaintiff has standing to sue and is entitled to the
10 protections of the Carmack Amendment.

11       The underlying public policy of the Carmack Amendment provides protection for shippers
12 whose cargo is lost or damaged.  *OneBeacon*, 634 F.3d at 1096.  By allowing shippers to sue in a
13 convenient forum of their choice, the Carmack Amendment in effect saves shippers from
14 traveling to some distant place to file their suit.  Furthermore, the Ninth Circuit has interpreted the
15 Carmack Amendment broadly to not limit its protection to only shippers.  *Id.* at 1098.  Defendant
16 has not met its burden of showing that Plaintiff is not entitled to the protection of the Carmack
17 Amendment through Cobalt's assignment.  Accordingly, the third *Argueta* exception invalidates
18 the forum-selection clause.  Plaintiff may bring suit in any venue consistent with the Carmack
19 Amendment, including a district in "which the defendant carrier operates."  49 U.S.C. §
20 14706(d)(2).  Thus, in the interest of justice and fairness, this Court finds the forum-selection
21 clause in the subject agreement unenforceable and DENIES Defendant's motion to transfer
22 venue.
23 //
24 //
25 //
26 //
27 //

---

[2]     Plaintiff does not identify which party received the bill of lading.  (*See* ECF No. 1 at 4–5.)

IV.   **CONCLUSION**

      For the above stated reasons, Defendant's motion to transfer venue (ECF No. 17) is hereby DENIED. The parties are hereby ordered to file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial.

      IT IS SO ORDERED.

Dated: February 13, 2017

Troy L. Nunley
United States District Judge